**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TONI HORN,** | ) | **CASE NO. 1:13CV2155** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **CITY OF CLEVELAND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #46) of Defendant,

City of Cleveland, for Summary Judgment.  For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Plaintiff, Toni Horn, has been employed by the City of Cleveland in the Department of

Public Works, Division of Waste Collection and Disposal since 1989.  She was promoted to

Foreman ( a management position) in 1996; and she is the first and only female manager in

the Division.  Below the Director, Commissioner and General Superintendent in the

management hierarchy, there are five Assistant Superintendents (one for each station), five

Foremen I (one for each station), and nine Foremen (three for each collection and disposal

station).  In December of 2010, Plaintiff served as Acting Foreman I due to the retirement of another Foreman I at the Ridge Station.  At the same station, Plaintiff also temporarily filled in for Assistant Superintendent Warren Thornton when he would be off for any reason.

The following are some relevant employment-related events in chronological order:

On December 5, 2011, Plaintiff, in the position of Waste Collection Foreman, left a route uncollected.  Plaintiff's crew worked "off the clock" to pickup the trash in the area missed.

In December 2011 and early January 2012, the positions of Assistant Superintendent and Foreman I were posted.  Plaintiff met the minimum qualifications and bid for both positions.  Commissioner Ronnie Owens awarded the positions to Timothy Owens and James Grant.

Commissioner Owens sent a suspension notice on December 22, 2011 to Plaintiff, advising her of a one-day suspension (effective February 1, 2012) for neglect of duty – leaving a route uncollected on December 5, 2011.  (ECF DKT #46-4 at 4).

On April 17, 2012, Plaintiff submitted a one-paragraph letter telling Commissioner Owens that she would like to relinquish her position as Acting Foreman I at the Ridge Road Station and return to the position of Waste Collection Foreman.  (ECF DKT #46-5 at 63).

On April 19, 2012, Owens accepted Plaintiff's request and ordered her to report to duty as Foreman of District 120 effective April 18, 2012.  (ECF DKT #46-4 at 64).

On April 19, 2012, Plaintiff submitted a letter of explanation to Commissioner Owens, saying in pertinent part: " I am not removing myself from the position because I cannot perform the job because I can and have been doing so.  I have been in the position as Acting

-2-

Foreman 101 (sic) for eleven months and have been a foreman for 15 years so I am fully aware of the policies and procedures as a foreman." . . . "The reason I was told during a grievance hearing on April 16, 2012 for not receiving the position is because I supposedly left some garbage out in District 110.  A district I was never properly trained in because I always had to train other Acting Foremans (sic) in District 130.  It is really unfair that I continuously get disciplined for things I have no control over as Acting Foreman 101.  All I am asking is that I be provided the same opportunity the two other Senior Foreman one's (James Grant & Tim Owens) received seeing that I am the next Senior Foreman.  I would like to be considered for the position as Asst. Superintendent or Foreman 101, whichever post first, when it is properly posted, I can receive proper training in all districts, and am no longer just acting in these positions."  (ECF DKT #48-7).

On May 21, 2012, Commissioner Owens posted three Foreman I positions.  Plaintiff met the minimum qualifications and bid for the positions. Owens awarded the positions to Vincent Callahan, Nathaniel Mason and Kevin Campbell.

On June 11, 2012, Commissioner Owens posted an Assistant Superintendent position in the District.  Plaintiff met the minimum qualifications and bid for the position.  The position was awarded to Michael Nunn.

On November 16, 2012, Plaintiff filed a union grievance for the failure to promote her to either the Foreman I position or the Assistant Superintendent position because of her gender.

Plaintiff made a dual filing of a gender discrimination complaint with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission

-3-

("EEOC") on November 20, 2012.

On March 25, 2013, Plaintiff investigated a motor vehicle accident involving one of her drivers.

Effective May 9, 2013, Plaintiff was suspended for fifteen days for neglect of duty; conduct unbecoming an employee in the public service; insubordination; and for other failure of good behavior which is detrimental to the service, or for any other act of misfeasance, malfeasance or nonfeasance in office.  According to the Suspension Letter from the Interim Commissioner, Randell T. Scott (ECF DKT #46-4at 10):

> Specifically, Ms. Horn, on April 12, 2013 we were contacted by the City of Cleveland's Prosecutor's office regarding an incident that occurred on March 25, 2013 that you were involved in.  Ms. Horn, while on duty you and a former employee traveled to the home of a motor vehicle accident victim and presented yourself as an investigator.  Also, Ms. Horn you failed to report this incident to your supervisor as well as the General Superintendent of Waste Collection.  It is alleged that on March 25, 2013 you came to the victim's home in efforts to convince the victim that the former employee was not the person involved in the motor vehicle accident.  Ms. Horn, this type of behavior will not be tolerated by any City employee; therefore, you will be suspended from your position with the City of Cleveland.

On August 8, 2013, Plaintiff filed an additional charge with the Ohio Civil Rights Commission for gender discrimination by virtue of the imposition of discipline; failure to promote; and failure to process her union grievance.

The instant lawsuit was filed on September 30, 2013.

On December 16, 2014, Plaintiff's November 2012 grievance was heard at arbitration.

On March 16, 2015, the Arbitrator issued an Opinion and Award that required the City to award Plaintiff the position of Foreman I.  The City filed a Motion to Vacate the Arbitration Decision in state court, which remains pending.

In Count One of her Complaint, Plaintiff alleges gender discrimination, in that she was illegally disciplined (one-day suspension) and was deprived of promotions to which she was entitled.  In Count Two, she alleges that she was retaliated against for having engaged in protected activity.  In addition, Defendant allegedly retaliated against her by failing and refusing to process the 2012 union grievances.

## II. LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at

-5-

1347.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson*, 477 U.S. at 249-50; and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Gender Discrimination  –  Failure to Promote</u>**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination "based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  It is a violation of

Title VII to fail to promote an employee because of his or her membership in a protected class.  *See, e.g., White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

"In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment."  *Johnson v. Kroger Co.*, 319 F.3d 858, 864-865 (6th Cir. 2003).  Horn does not offer direct evidence of discrimination, instead she seeks to establish her case through circumstantial evidence.

The circumstantial approach requires the plaintiff to present a prima facie case, which then creates a rebuttable presumption of unlawful discrimination.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 & n.6 (1981); *Johnson*, 319 F.3d at 866.  The burden at the prima facie stage is not an onerous one, and it is easily met.  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000).  Next, the burden "shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

At this stage, "the burden of producing evidence of pretext essentially merges with the burden of persuasion, which always lies with the plaintiff."  *Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004) (quoting *Wilkins v. Eaton Corp.*, 790 F.3d 515, 522 (6th Cir. 1986)).  A plaintiff may demonstrate pretext by showing that the defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d

1016, 1021 (6th Cir. 2000)).

> In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] test to fit the specific context. Under *Nguyen* [*v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)], which is the governing precedent, a plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*White*, *supra*, 429 F.3d at 240.

**Prima facie claim**

Plaintiff Horn has satisfied the four prongs of her prima facie gender discrimination case based upon failure to promote. She is a female and, in fact, the only female Foreman in the City Division of Waste Collection and Disposal. On or around May 21, 2012, Plaintiff bid for the three posted Foreman I positions and she inarguably possessed the minimum qualifications. Further, on or about June 11, 2012, Plaintiff bid for the posted position of Assistant Superintendent; and again, she met the minimum qualifications. Commissioner Owens named similarly qualified male candidates, Vincent Callahan, Nathaniel Mason and Kevin Campbell, and Michael Nunn to the Foreman I positions and the Assistant Superintendent job, respectively.

**Legitimate, non-discriminatory reason**

Once the plaintiff has made a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.

The City of Cleveland proffers evidence that Commissioner Owens applied the criteria

set forth in the contract between the City and Union Local 1099 (ECF DKT #46-4), and

determined that Callahan, Mason, Campbell and Nunn were the most qualified candidates for

the open positions.  Article 25, ¶ 72 of the Contract states:

> The Employer shall consider the following factors to determine the
> qualifications of applicants:
>
> A.  Seniority;
>
> B.  Past performance/work-related experience/demonstrated abilities/previous
>     temporary transfer;
>
> C.  Work-related experience with another employer (where such information is
>     provided by the employee);
>
> D.  Aptitude;
>
> E.  Education/training;
>
> F.  Prior discipline imposed during the two year period immediately preceding the
> date      of the bid notice;
>
> G.  Lack of interest/failure to follow through;
>
> H.  Opinion of supervisors, judgment of applicant's knowledge, skills and ability;
>
> I.  Past attendance record (if the employee applicant has been suspended for
>     attendance-related misconduct during the six month period immediately preceding
>     the date of the bid notice or for violation of the City's Absence Without Leave
>      Policy during the twelve month period immediately preceding the date of the bid
>       notice); and
>
> J.  Any special requirements reasonably related to the bid position.

Defendant does not dispute that Horn had the most seniority within the Division of

Waste Collection and Disposal among the bid candidates.  Defendant also acknowledges that

Horn served as Acting Foreman I for nearly a year and filled in for Assistant Superintendent

Thornton when he was absent.  (Criteria A & B).  Work experience with another employer

-9-

(Criterion C) and Education/training (Criterion E) were not significant considerations for any of the individuals.  Plaintiff did not have a negative attendance record; and Michael Nunn had an attendance infraction that did not result in suspension.  (Criterion I).  However, Owens found that Plaintiff compared less favorably in terms of prior discipline, lack of interest and opinion of supervisors (Criteria F, G and H), leading to the conclusion that she was not qualified for promotion to Foreman I or Assistant Superintendent.

Plaintiff was the only applicant with negative supervisor reviews.  General Superintendent Anthony Ludwig testified at the Grievance Arbitration Hearing that: "Yes.  I mean, we [he and Commissioner Owens] discussed the potential for these individuals being promoted, and I know that Michael Nunn was spoke highly of.  They were all spoke highly of.  There were no – like I said, the only candidate really that wasn't getting a good review was Ms. Horn."  (ECF DKT #46-3 at 52).

On December 5, 2011 (within two years of the bid notice), Plaintiff left one of her routes uncollected.  She had the crew picking up the trash "off the clock."  Plaintiff received a one-day suspension for this infraction.  The City believed that she attempted to conceal her error from her supervisors and put the City at risk when "[e]mployees were off the clock picking up trash, and they had no authority to be out there."  (Ludwig Depo., ECF DKT 46-7 at 33).  Ludwig testified further:

> You know how I found out that even occurred, and maybe we may not have had knowledge, but she happened to leave the trash out that was on my particular street.  That is how I became knowledgeable of it.
>
> I was at home.  A city truck coming down my street.  And then I saw Ms. Horn out there also follow this particular truck.  They had no authority to be out there after hours.  *Id.*

In Commissioner Owens' view, Plaintiff's conduct on December 5, 2011 put the City at risk for liability; and therefore, justified disciplinary action.  Moreover, Plaintiff demonstrated a lack of aptitude on that day.  She should have known the routes in her assigned District and should have familiarized herself with the maps provided.  (Horn's testimony at Arbitration Hearing, ECF DKT #46-3 at 26-27).  Policies and procedures required Horn to notify her supervisors that a collection was missed.  Instead, she "[tried] to conceal the fact that she left garbage out."  (Ludwig Depo., ECF DKT #46-7 at 33).

The City also determined that Plaintiff showed a lack of interest, which negatively impacted her qualifications for promotion:

> Ms. Horn did actually get a promotion, which she then did turn down.
> Ms. Horn was being promoted to a transfer station attendant, which paid more than what she was currently making. And basically the last minute she declined that promotion.  (Ludwig Depo., ECF DKT #46-7 at 34).

In addition, in April of 2012, prior to the bid notices for the Foreman I and Assistant Superintendent positions, Plaintiff asked Commissioner Owens, in writing, to be relieved from the Acting Foreman I post and returned to Waste Collection Foreman.  (ECF DKT #46-5 at 63-66).  Defendant reasonably believed that Horn's voluntary relinquishment of her position demonstrated a lack of interest and a lack of desire to move up in the organization.

According to Article 25, ¶ 70 of the Contract between the City and the Union, "[a]ll determinations regarding qualifications remain within the sole discretion of the City."  The Court finds, in light of this evidence and testimony, that Defendant has met its burden of articulating a legitimate, non-discriminatory reason for not promoting Plaintiff.


**Pretext**

-11-

Now, Plaintiff must demonstrate, by a preponderance of the evidence, that Defendant's proffered reasons for the adverse employment action, i.e., failure to promote, were pretextual.  As previously stated: "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct."  *Dews*, 231 F.3d at 1021.  "For purposes of establishing pretext, a plaintiff must show more than a dispute over the facts upon which the [adverse action] is based."  *Kumar v. Aldrich Chemical*, 911 F.Supp.2d 571, 589 (S.D. Ohio 2012) citing *Abdulnour v. Campbell Soup Co.*, 502 F.3d 496, 502 (6th Cir. 2007).  A plaintiff must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."  *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  So long as an employer honestly believed its proffered reason, an employee cannot show pretext, even if the facts are later shown to be incorrect.  *Segel v. Kimberly-Clark Corp*., 473 F.App'x 416, 421 (6th Cir. 2012); *Smith v. Chrysler Corp*., 155 F.3d 799, 806 (6th Cir. 1998).

Horn argues that gender discrimination was the real basis for the City's decision not to promote her.  She insists that supervisors and managers discriminated against her because she is a female.  With regard to Kevin Campbell, a Foreman I:  " I was subjected to harsh talking.  . . .  I was just getting - getting - my men was getting taken away from me. I was getting harsh treatment.  Every day I was coming to work, I was getting harsh treatment."  (Horn Depo., ECF DKT #46-1 at 55).

As to Warren Thornton, her immediate supervisor:

Q.  Was he difficult to work for?

-12-

A.  Was he?  Yes.

Q.  In what respect?

A.  It was just a ... It was just like, this is a man's job.  He made it hard for women.

He was really difficult to work with.

Q.  Was he verbally abusive?

A.  He was not so much verbally abusive, he was just hard on women.

Q.  As opposed to men?

A.  Yes.

Q.  Can you give me an example?

A.  I mean, he would say something like, this is a man's job.

Q.  In a discouraging manner?

A.  Um-hmm.

(Horn Depo., ECF DKT #46-1 at 46-47).

Concerning General Superintendent Ludwig:

A.  Basically, I remember mentioning something to him, saying something to him. I

know I said something to him in a hostile manner, yeah.

Q.  In a hostile manner?

A.  Because I felt he was discriminating to me, yeah, and I told him.

Q.  So you discussed with him the issue that you were not getting the proper training

in the foreman I position?

A.  No, I didn't Discuss that.

Q.  What did you discuss with him?

A.  I told him that he don't call me.  When I'm on the radio, he don't call me. He would just bypass me and call the men. He just totally ignored me, and I knew that, and I told him that.

(Horn Depo., ECF DKT #46-1 at 44-45).

There is no probative evidence that Campbell or Thornton had any input into the promotion decision.  Commissioner Owens was the ultimate decision-maker; but there is testimony that Ludwig would confer with Owens about the candidates and the applicable criteria.  (Arbitration Hearing, ECF DKT #46-3 at 52).  Nevertheless, the statements by these three individuals have no context; there is no timeframe provided; and therefore, the intent of the speakers is unclear.  "Isolated or ambiguous comments are too abstract to be considered as circumstantial evidence of discrimination in pretext analysis;" and thus, Plaintiff fails, in this regard, to meet her burden of showing pretext by a preponderance of the evidence.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355-57 (6th Cir. 1998).

In addition, Plaintiff argues that Defendant's non-discriminatory reason for not promoting her to one of the Foreman I positions or to the Assistant Superintendent position is insufficient and inconsistent.  She finds fault with the application of the Union contract criteria to her record with the Division of Waste Collection and Disposal.  Her twenty-six years with the Department and nineteen years in management exceeded all of the other candidates.  She feels that she is clearly superior by virtue of her seniority.

She disputes that her disciplinary record makes her an inferior candidate as compared to Nathaniel Mason and Michael Nunn, who also were disciplined in the preceding two years. Mason received a two-day suspension for moving furniture on City time and in a City vehicle

-14-

on June 30, 2011.  Nunn received discipline for his failure to wear a seatbelt and an attendance policy violation (not a suspension) during the relevant time period.

Plaintiff disagrees that her relinquishment of the Acting Foreman I position at the Ridge Road Station evidenced a lack of interest in promotion.  Her explanatory letter, dated April 19, 2012, stated that she was capable of performing the job and had done so for almost a year, but that she felt she would be on the appropriate track for advancement if she were not in an "acting" position.

The Court finds that Plaintiff has not met her burden of showing that Defendant's proffered reasons were insufficient to warrant the challenged conduct; thus, she has failed to demonstrate pretext.

Defendant acknowledged Plaintiff's seniority surpassed that of the other candidates. However, that was only one of the many criteria considered; and, according to the Union Contract, "only when the qualifications of two (2) or more applicants are equal will the position be awarded on the basis of seniority."  (Article 25, ¶ 70, ECF DKT #46-4).

Defendant reasonably believed that Plaintiff's failure to collect trash on a route and using the crew after hours and "off the clock" to conceal her error constituted conduct deserving of discipline and demonstrated a lack of aptitude for her job.  Although Mason's use of a City truck for non-City business during work hours was a serious violation, it did not reflect on his ability to perform a Foreman's tasks.  Similarly, Nunn's failure to wear a seatbelt was significant but not as egregious as Plaintiff's actions.  The Contract between the Union and the City grants the City "sole discretion" in weighing the qualifications for promotions.  (Article 25, ¶ 70, ECF DKT #46-4).

The promotion to transfer station attendant which Plaintiff turned down, coupled with her relinquishment of the Acting Foreman I position, rationally justified Defendant's view that Plaintiff lacked interest or showed a failure to follow through.

"An employer has even greater flexibility in choosing a management-level employee, as is the case here, because of the nature of such a position." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). When "deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998).

Courts may not second-guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Corell v. CSX Transp., Inc*., 378 F.App'x 496, 505 (6th Cir. 2010) quoting *Risch v. Royal Oak Police Dept*., 581 F.3d 383, 399 (6th Cir. 2009).

For these reasons, Defendant is entitled to summary judgment in its favor on Plaintiff's Gender Discrimination claim in Count One of her Complaint.

**Retaliation**

Title VII prohibits an employer from retaliating against an employee who has opposed discriminatory conduct or filed " a charge, testified, assisted, or participated in any manner in

-16-

an investigation, proceeding, or hearing under [Title VII]."  In *Nguyen*, 229 F.3d at 563, the

Sixth Circuit articulated the standard a plaintiff must meet to establish a prima facie

retaliation case:

> [A] plaintiff must establish that: (1) she engaged in activity protected by Title
> VII; (2) the exercise of her civil rights was known to the defendant; (3)
> thereafter, the defendant took an employment action adverse to the plaintiff;
> and (4) there was a causal connection between the protected activity and the
> adverse employment action.

It is undisputed that filing charges with the OCRC and with the EEOC by Horn

(11/20/12 & 8/8/13) is an activity protected under Title VII, which satisfies the first prong.

Defendant does not deny that the City knew of Horn's civil rights complaints.  Defendant

took an employment action adverse to Plaintiff when Horn was disciplined with a fifteen-day

suspension, effective May 9, 2013.  As was noted earlier, Plaintiff received the suspension for

neglect of duty, conduct unbecoming an employee in the public service and insubordination.

> Specifically, Ms. Horn, on April 12, 2013 we were contacted by the City of
> Cleveland's Prosecutor's office regarding an incident that occurred on March
> 25, 2013 that you were involved in.  Ms. Horn, while on duty you and a former
> employee traveled to the home of a motor vehicle accident victim and
> presented yourself as an investigator.  Also, Ms. Horn you failed to report this
> incident to your supervisor as well as the General Superintendent of Waste
> Collection.  It is alleged that on March 25, 2013 you came to the victim's
> home in efforts to convince the victim that the former employee was not the
> person involved in the motor vehicle accident.   (ECF DKT #46-4 at 10).

Next, the Court must consider the fourth and final prong:  whether Horn has produced

evidence sufficient to prove a causal connection between her protected activity and her

suspension.  "The burden of proof at the prima facie stage is minimal; all the plaintiff must do

is put forth some credible evidence that enables the court to deduce that there is a causal

connection between the retaliatory action and the protected activity."  *Dixon v. Gonzales*, 481

-17-

F.3d 324, 333 (6th Cir. 2007).

Horn asserts that the required causal connection is evidenced by the temporal proximity between her OCRC/EEOC filings and her discipline, i.e., just over five months. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008). However, *see Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986) (temporal proximity period of four months did not support prima facie inference of retaliation); *see also Matricardi v. Astro Shapes, Inc.* 2007 WL 2902918, 14  (N.D.Ohio, 2007) (plaintiff failed to satisfy prima facie burden of retaliation when temporal proximity period of four months absent other evidence).  "In this circuit, a period of more than four months was found to be too long to support an inference of causation."  *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 550 (6th Cir. 2008).  "Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with 'other evidence of retaliatory conduct to establish causality.'" *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010).

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563.  Evidence that the City treated Horn differently from similarly situated employees is relevant to causation.  In her 2013 OCRC charge, Horn states: "To my

-18-

knowledge, no other manager has been given such severe discipline as myself within the past several years, while I was merely exercising due diligence on behalf of [the City's] best interest."  (ECF DKT #46-2 at 66).  Plaintiff does not identify any other managerial level employee by name nor does she indicate that another employee received a lesser penalty for a similar infraction.

Circumstantial evidence of retaliatory animus on the part of Defendant or facts demonstrating increased scrutiny of Plaintiff following her protected activity could be sufficient to satisfy the causation prong.  *See, e.g., Hamilton v. Gen.Elec.Co*., 556 F.3d 428 (6th Cir. 2009).  However, a review of the parties' submissions does not reveal any greater scrutiny of Plaintiff's work habits after the OCRC filing, than before she engaged in protected activity.  Furthermore, the Court has already determined that any allegedly discriminatory statements by Ludwig and Thornton were too isolated and vague to create an atmosphere of illegal animus.

**<u>Grievance process</u>**

Horn also contends that the City failed and refused to process her union grievances in retaliation for filing complaints with the OCRC/EEOC.  In 2012, the Union filed a grievance on behalf of Toni Horn, alleging that the City violated the Collective Bargaining Agreement when it denied her bids for promotional opportunities.  An Arbitration Hearing was held on December 16, 2014 and the Arbitrator's Award was issued on March 16, 2015.

Plaintiff directs the Court's attention to Article 44, ¶ 138 of the Union Contract:

"It is mutually agreed that the *prompt* adjustment of grievances is desirable in the interest of sound relations between the employees and the City. The *prompt* and fair disposition of grievances involves important and equal obligations and responsibilities, both joint and independent, on the part of the representatives

of each party to protect and preserve the Grievance Procedure as an orderly means of resolving grievances."   (Emphasis added).

Although the Court recognizes that the resolution of Horn's grievance took a long time, the term "prompt" is a relative term and is not defined in the Union Contract.  It is obvious that the EEOC charges and the instant lawsuit inserted delays into the process.  The Court is also aware that the City has filed a state court action to vacate the Award; so, further delay is inevitable.  Plaintiff has not provided evidence of what a typical timeframe is for processing a grievance of this kind; and the Court, as fact-finder, should not be asked to speculate.

Moreover, the Court finds it significant that the Arbitrator found, without assessing blame, that the "delay undoubtedly was influenced by the pending court litigation that involves similar factual issues relative to the denial of the Grievant's promotional bids." (ECF DKT #42 at 8).  Additionally, Plaintiff's contentions that the procedural delays evidenced discriminatory/retaliatory animus are defeated by her own stipulation at the Arbitration Hearing:  "The parties stipulated that all procedural and substantive requirements of the grievance/arbitration provisions and the CBA were complied with."  *Id.* at 8-9.

Therefore, the Court holds that Plaintiff has failed to put forth enough credible evidence enabling the Court to deduce that there is a causal connection between any alleged retaliatory action (suspension or delayed grievance processing) and the protected activity of filing charges with the OCRC/EEOC.  Horn has not produced "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had [she] not filed a [discrimination/retaliation charge].  *Nguyen*, 229 F.3d at 563.  Plaintiff failed to meet her burden of establishing a prima facie retaliation claim; and therefore,

-20-

Defendant is entitled to summary judgment on Count Two of Plaintiff's Complaint.

### III. CONCLUSION

For the foregoing reasons, the Motion (ECF DKT #46) of Defendant, City of Cleveland, for Summary Judgment is granted.

**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　**s/ Christopher A. Boyko**
　　　　　　　　　　　　　　　　**CHRISTOPHER A. BOYKO**
　　　　　　　　　　　　　　　　**United States District Judge**

**Dated:  January 22, 2016**